**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
:
**SUM CHAN,** :
: Case No. 19-cv-_____-_____
**Plaintiff,** :
: **COMPLAINT**
v. :
: **DEMAND FOR JURY TRIAL**
:
**THE CITY OF NEW YORK, NEW YORK CITY** :
**POLICE DEPARTMENT, QUEENS COUNTY** :
**DISTRICT ATTORNEY'S OFFICE, POLICE** :
**OFFICER RAFFAELE BARILE, POLICE** :
**OFFICER STACY RAO & QI WENG,** :
:
**Defendants.** :
---------------------------------------------------------------------X

Plaintiff SUM CHAN (hereinafter "plaintiff"), by and through his attorney herein, Michael R. Curran, Esq., alleges the following in connection with this consolidated suit in negligence, violation of plaintiff's civil rights and, as to the civilian defendant, intentional tort and related claims:

### NATURE OF THE ACTION

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts claims under New York law as to the government actors. As to the civilian defendant, Qi Weng, plaintiff cites claims of intentional tort and other claims under New York State law, leading to state action herein.

### JURISDICTION

2. This Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. §§ 1331, 1343(a)(3),(4).

3.  This Court may also exercise supplemental jurisdiction over the plaintiff's state law claims that arise from the same facts and circumstances under 28 U.S.C. § 1367 as to the state actors.

4.  The Court may have jurisdiction over the person of Qi Weng, non-state actor, through conduct that may invoke jurisdiction under 28 U.S.C. §§ 1332, 1343 and/or 1367.  In the event the Court finds no federal jurisdiction over Qi Weng, plaintiff requests the Court to order remand to the applicable state court.

### JURY TRIAL DEMANDED

5.  Plaintiff demands trial by jury of all issues properly triable thereby.

### VENUE

6.  Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b),(c), as all events herein occurred within the territorial Eastern District of New York.

### CONDITION PRECEDENT SATISFIED AS TO THE MUNICIPALITY

7.  As to the municipality of the City of New York, a Notice of Claim was timely filed on March 26, 2019 with the New York City Comptroller at 1 Centre Street, New York, New York 10007, following dismissal of the criminal action brought against plaintiff.  The Notice of Claim was assigned Claim No. 2019PI008457 by the City of New York.  Plaintiff appeared for the requisite hearing pursuant to Section 50-H of the General Municipal Law held on June 26, 2019 at the private law offices of a firm retained by the City of New York.  These actions have satisfied the condition precedent for bringing a legal action against the City of New York and its subdivisions and individual actors.

### THE PARTIES

8.  Plaintiff SUM CHAN is a United States citizen and citizen and resident of the City and State of New York, residing in Queens County, New York.

9.  That at all times herein mentioned, defendant CITY OF NEW YORK (hereinafter "City") was and is a

municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

10. That at all times herein mentioned, defendant City operated, controlled and maintained a municipal police force known as defendant NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), who were empowered and authorized to arrest, detain, book, prepare paperwork on, assign NYSIDs to, notify federal law enforcement entities of and produce for prosecution criminal suspects, perpetrators or accused.

11. That at all times herein mentioned, defendant City operated, controlled, maintained and authorized the actions of defendant QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE (hereinafter "Queens DA"), who, upon intake of an alleged criminal suspect, investigated facts and evidence as to arrests, prepared charging documents, such as criminal complaints, prepared suspects' paperwork packages for arraignment and were present at the time suspects were formally charged and arraigned for prosecution. Upon arraignment, the Queens DA followed each case through the sequence of prosecution until case resolution or disposal.

12. Defendant Police Officer RAFFAELE BARILE (hereinafter "P.O. Barile"), at all times herein, was employed by defendant NYPD.

13. That all times herein mentioned, defendant P.O. Barile was acting within the course and scope of his employment with defendants City and NYPD.

14. That at all times herein mentioned, defendant P.O. Barile was acting under color of state law.

15. Defendant P.O. Barile is sued herein in both his individual and official capacities.

16. Defendant Police Officer STACEY RAO (hereinafter "P.O. Rao"), at all times herein, was employed by defendant NYPD.

17. That all times herein mentioned, defendant P.O. Rao was acting within the course and scope of her employment with defendants City and NYPD.

18. That at all times herein mentioned, defendant P.O. Rao was acting under color of state law.

19. Defendant P.O. Rao is sued herein in both her individual and official capacities.

20. Defendant QI WENG (hereinafter "Weng") is a private state actor and believed to be operating an illegal or unlicensed bus or van company.

21. That at all times herein, defendant Weng, alleged by the City, NYPD, Queens DA, P.O. Barile and P.O. Rao to be a victim of assault with a weapon by plaintiff on December 26, 2018, was in reality the perpetrator or assailant who assaulted plaintiff causing serious plaintiff physical injury and who instigated plaintiff's arrest by the state actors in this matter.

22. That at all times herein, upon information and belief, defendant Weng is believed to have been transporting illegal or undocumented persons in his van to work in unlicensed massage parlors or other illegal activities.

23. That at all times herein, defendant Weng may have been violating federal law.

24. That at all times herein, the actions of the state actors may have inadvertently or negligently facilitated defendant Weng's activities in violation of federal law.

25. Defendant Weng is sued in his individual capacity. In the event defendant Weng was operating or working for an unknown entity, the pleadings will be amended accordingly.

## STATEMENT OF FACTS

26. The facts stated in this Complaint are based, *inter alia*, on the personal knowledge of plaintiff regarding events in which he was directly involved and "upon information and belief." The sources of "upon information and belief" factual statements are either from pure observations of the plaintiff based upon his own personal knowledge or are derived from documents from the underlying criminal prosecution or public documents from public sources. These sources may be incomplete. The Complaint is of

necessity drawn without the benefit of full discovery proceedings.

27.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" through "26" above as if set forth more fully herein.

28.     On December 26, 2018, at or about 9:30 a.m., plaintiff, who worked part-time for a bus company but who was not working on this particular date, drove his privately-owned automobile into a parking lot in Flushing, Queens County, New York, near Queens Chinatown.

29.     Plaintiff, who is Cantonese Chinese, observed that defendant Weng, who is Chinese, was sitting in his van, blocking a number of parking spaces. In the van, plaintiff saw five or six Chines women. From his personal knowledge, it was clear to him that defendant Weng was operating illegal bus transport. It appeared to plaintiff that defendant Weng was either bringing the women home or taking them to work.

30.     Plaintiff was not interested in what defendant Weng was doing, he just wanted him to move so he could park his car and he, plaintiff, could go eat breakfast in a Chinese café.

31.     Plaintiff got out of his car and walked over to defendant Qi's van, tapping on the window. He wanted to ask him to move so he could park.

32.     Instead of responding, defendant Qi suddenly exited the vehicle, cursing plaintiff, picking up a large piece of subway grate, making as if he were going to hit plaintiff with the grate.

33.     Plaintiff pulled out a tiny cuticle scissors he had in the fanny pack he was wearing to defend himself, pointing them to the sky. The scissors were about 3.5 inches in length.

34.     Some of the women in the van, probably because they were afraid of the police becoming involved, came out of the van and told defendant Weng to drop the grate piece, which he did. Plaintiff put the cuticle scissors back in his fanny pack.

35.     Defendant Weng was not finished. He came over to plaintiff and punched him in the neck, causing

very red abrasions. Plaintiff fell backwards on top of his wrist which broke. The broken wrist and injury to plaintiff's throat caused him great pain and emotional suffering. Defendant Weng then kicked the door on plaintiff's car, inflicting damage later appraised at $937.68. (Plaintiff had taken several photos of defendant Weng, his van and the damage to plaintiff's car.)

36. A nearby Caucasian witness, who spoke with an American accent, told plaintiff he would call police, which he did. Plaintiff did not witness the bystander call the NYPD.

37. The NYPD responded in 15 or 20 minutes. When the NYPD arrived, plaintiff was bleeding from his throat, where he had been hit and was holding his broken wrist forward.

38. The two responding officers were defendants P.O. Barile, Tax Reg. #959473, and P.O. Rao, Tax Reg. #959919. They saw plaintiff, but instead of talking to him, went over and talked to defendant Weng, who was unmarked or injured as there had been no contact between plaintiff and defendant Weng.

39. The officers then came to plaintiff and defendant P.O. Rao asked: "Do you have a knife?" Plaintiff then responded: "No."

40. At some point in the confusion, plaintiff stated to defendants NYPD, P.O. Barile and P.O. Rao that were video cameras in the parking lot, but upon information and belief no effort was made to check them.

41. The two officers then arrested plaintiff: (a) in spite of his visible physical injuries, one of which was bleeding, while defendant Rao had no injuries and (b) in spite of the fact that they asked plaintiff no investigative questions, nor used a Chinses interpreter, which would have disclosed the fact defendant Rao had been brandishing the subway grate, a clearly dangerous and life-threatening instrumentality.

42. Defendant P.O. Rao then proceeded to search plaintiff's fanny pack and found the tiny cuticle scissors. Defendants Barile and Rao cooperated, participated and in effect conspired with defendant Weng to arrest the plaintiff, depriving him of his rights, privileges and immunities secured by the U.S.

Constitution, including, but not limited to, his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

43. Plaintiff was taken to an ambulance. He asked the officers for his coat in his car, as he was cold and he was nearly 70 years of age at the time. Defendants Barile and Rao refused and put shackles on him, chaining him into the inside of the ambulance. The restraint was unreasonable and failure to allow the plaintiff to obtain his coat was cruel and unusual punishment given his age, weather and injuries.

44. The NYPD took plaintiff to New York Presbyterian Queens, where he was treated in the emergency department. Plaintiff was diagnosed with "fracture of the lower end of unspecified radius" and "comminuted, impacted fracture of the distal radial metaphysis with dorsal angulation." The ER put a cast on his wrist. The NYPD then took plaintiff to the 109th Precinct. The entire time plaintiff was arrested and treated and taken to arraignment, he was handcuffed with shackles placed on his legs.

45. Plaintiff was processed, taken to the holding cells in Kew Gardens, Queens, and, after a wait, was arraigned. Plaintiff was held about eleven hours, in spite of the fact of his injuries.

46. In spite of the fact that plaintiff was the victim and defendant Weng was the actual perpetrator, plaintiff was arrested, charged and arraigned for the following charges: (a) NY Penal Law 120.00-1, Assault in the Third Degree; (b) NY Penal Law 120.14-1, Menacing in the Second Degree; (c) NY Penal Law 265.01-2, Criminal Possession of a Weapon in the Fourth Degree; and (d) NY Penal Law 240.26-1, Harassment in the Second Degree. (His case docket has been omitted for confidentiality purposes.)

47. All defendants agreed, cooperated, participated and conspired with their codefendants herein to assist in and effectuate plaintiff's unlawful arrest, detention and malicious prosecution for crimes they knew he did not commit and in so doing deprived plaintiff of the rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, his rights under the Fourth and

Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures and to be prosecuted without due process of law or probable cause.

48. Following the arrest, plaintiff underwent prosecution. Plaintiff's counsel to defendant Queens DA the above story, but it wasn't until March 26, 2019 the case was dismissed pursuant to CPL 30.30. Thus, defendant Queens DA waited an unreasonably long time to resolve the blatant defendant NYPD error.

49. About a month after his arrest, plaintiff was contacted by the defendant Queens DA, who wanted plaintiff to sign papers alleging that defendant Weng kicked and damaged the door of plaintiff's car. Plaintiff sent a letter objecting to this prosecution, once more stating that he was the victim and that defendant Weng was the perpetrator and the defendant Queens DA should be prosecuting defendant Weng not plaintiff. However, defendant Queens DA never responded to this request.

50. In the interim, plaintiff had surgery on his wrist January 17, 2019. Thereafter, plaintiff was subjected to prolonged therapy for his wrist for several months.

51. Plaintiff still complains of pain in his wrist, but also of the shame and scorn he felt during the whole of the proceedings against him.

52. Plaintiff has sustained, *inter alia*, deprivation of constitutional rights, loss of enjoyment of life, loss of liberty, physical injuries from defendant Weng, emotional injuries from defendant NYPD *et al.*, loss of income as bus driver, pain and suffering, emotional distress, humiliation, indignities and embarrassment, degradation. The state actors worked with damage from defendant Weng to inflict some of all of these.

54. As to defendant Weng, plaintiff has suffered physical pain and suffering, loss of enjoyment of life, mental and psychological distress, medical expenses, loss of income and fear and anxiety.

55. The amount of damages sought in this action exceeds the jurisdictional limits or all lower Courts that might otherwise have jurisdiction.

## FIRST CLAIM AGAINST ALL DEFENDANTS

### (False Arrest/Detainer Claim Under 42 U.S.C. § 1983)

56. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "55" above as if set forth more fully herein.

57. All defendants, while acting in concert and, upon information and belief, within the scope of their employment and authority, and without a warrant, seized plaintiff, forcibly put plaintiff into handcuffs and shackles in spite of his broken wrist, placed plaintiff under arrest without any reasonable cause to belief that plaintiff had committed, was committing or was about to commit any offense, and caused plaintiff to be detained at two places, and thereby deprived plaintiff of his rights, liberties and freedoms under the color of state law, including plaintiff's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

58. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00, as set forth in the Notice of Claim to which defendant City never responded.

## SECOND CLAIM AGAINST ALL DEFENDANTS

### (Malicious Prosecution Claim Under 42 U.S.C. § 1983)

59. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "58" above as if set forth more fully herein.

60. Defendants, acting in concert and, upon information and belief, within the scope of their employment and authority, caused plaintiff to be prosecuted with malice and without probable cause—a prosecution terminated in plaintiff's favor—in violation of plaintiff's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

61. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

### THIRD CLAIM AGAINST ALL DEFENDANTS

**(Malicious Abuse of Process Claim Under 42 U.S.C. § 1983)**

62. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "61" above as if set forth more fully herein.

63. Defendants, acting in concert and, upon information and belief, within the scope of their employment and authority, employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside legitimate ends of the process. Such collateral objective included, but was not limited to, covering up defendants' illegal actions in knowingly arresting plaintiff without any legal basis, justification or probable cause.

64. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and that by virtue of the aforementioned acts, plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law or prosecution only under probable cause.

65. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

### FOURTH CLAIM AGAINST ALL DEFENDANTS

**(Failure to Intervene Claim Under 42 U.S.C. § 1983)**

66. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "66" above as if set forth more fully herein.

67. Each individual defendant, with the exception of defendant Weng, had an affirmative duty to

intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendants' presence by other defendants, but failed to intervene to prevent unlawful conduct, despite having had a realistic opportunity to do so, in violations of plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

68. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

## FIFTH CLAIM AGAINST ALL DEFENDANTS

### (Conspiracy Claim Under 42 U.S.C. § 1983)

69. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "68" above as if set forth more fully herein.

70. Defendants agreed, cooperated, participated and conspired to assist in and effectuate plaintiff's unlawful arrest, detainer and malicious prosecution for crimes he did not commit, and in so doing deprived plaintiff of his rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

71. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

## SIXTH CLAIM AGAINST ALL DEFENDANTS

### (Violation of Due Process Claim Under 42 U.S.C. § 1983)

72. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "71" above as if set forth more fully herein.

73. By the conduct and actions described above, defendants while engaged under color of state law, conspired to interfere with and violate rights secured to plaintiff by the Constitution of the United States in violation of 42 U.S.C. § 1983, including, but not limited to, plaintiff's Fourth, Sixth and Fourteenth

Amendment rights.

74. Defendants, through the actions alleged above, consciously disregarded known and excessive risks to plaintiff's liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain a conviction against plaintiff at all costs.

75. By refusing to question plaintiff about the facts and to adhere to a false narrative more or less created by defendants P.O. Barile, who signed the Complaint, and P.O. Rao, who unreasonably searched plaintiff's bag for a weapon, all defendants joined in to deprive plaintiff of his right to due process.

76. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

### SEVENTH CLAIM AGAINST ALL DEFENDANTS

**(Municipal Liability "Monell" Claim Under 42 U.S.C. § 1983)**

77. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "76" above as if set forth more fully herein.

78. The individual defendants, singly and collectively, while acting within the scope of their employment and authority, upon information and belief, and under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules or usages of defendant NYPD and their specific precinct(s) and the defendant Queens DA forbidden by the Constitution of the United States, under Monell v. Dept. of Soc. Servs. of N.Y., 436 U.S. 658, 690-91, 98 S.Ct. 2018 (1978).

79. The foregoing customs, policies, practices, procedures, rules and usages include, but are not limited to, making arrests without probable cause, initiating and continuing prosecutions without probable cause, and committing perjury. This includes, without limitation, as practices of defendants City and NYPD:

(a.) police officers, more or less, randomly assigning roles of perpetrator and victim to parties when responding to a call to a scene of crime or mayhem;

(b.)  failure of responding officers to properly assess facts at a scene, failing to properly locate and assess evidence in connection with claims of parties at scene;

(c.)  officers at the scene of a call failing to employ qualified language interpreters;

(d.)  practice of police officers to forge ahead with an arrest once a suspect is handcuffed; and

(e.)  defendants City and NYPD having notice of the deficits of the foregoing, failing to curb or control the use of said practices.

80. The abuse to which plaintiff was subjected was consistent with an institutionalized practice of defendant NYPD, which is known and ratified by defendant City.

81. Despite knowledge of these institutionalized practices, defendant City has at no time taken any effective action to prevent defendant NYPD personnel from continuing to engage in this type of misconduct.

82. Defendant City had prior notice of the vicious propensities of defendants, but took no steps to train them, correct their abuse of authority or to discourage their unlawful use of authority.

83. The failure of defendant City to properly train defendants included the failure to instruct them in applicable provisions of the State Penal Law of the State of New York, federal and state constitutional limitations and the proper and prudent use of force.

84. Defendant City authorized, tolerated as institutionalized practices and ratified the misconduct detailed above by, among other things:

(a.)  failing to properly discipline, train, restrict and control employees, including defendants, known to be irresponsible in their dealings with citizens of the community;

(b.)  failing to take adequate precautions in the training, hiring, promotion and retention of police personnel, including specifically defendants herein;

(c.)    failing to forward to the offices of defendant Queens DA evidence of criminal acts committed by police personnel;

(d.)    failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public; and

(e.)    that failure to supervise and/or train by defendant City of defendants herein rose to the level of deliberate indifference to the consequences of its actions, and indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, *inter alia*, plaintiff's Fourth and Fourteenth Amendment rights.

85.    Defendant NYPD has inadequately screened, hired, retained, trained and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom defendant NYPD police officers come into contact.

86.    The foregoing customs, policies, practices, procedures, rules and usages constituted deliberate indifference to plaintiff's safety, well-being and constitutional rights.

87.    The foregoing customs, policies, practices, procedures, rules or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff and the escape from liability or culpability of the actual perpetrator, defendant Weng.

88.    The foregoing customs, policies, practices, procedures, rules or usages were the moving force behind the constitutional violations suffered by plaintiff.

89.    Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

**EIGHTH CLAIM AGAINST ALL DEFENDANTS**

**(VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE NEW YORK STATE CONSTITUTION)**

90. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "89" above as if set forth more fully herein

91. Defendants, including defendant Weng, acting in concert and, upon information and belief, within the scope of their employment and authority violated plaintiff's right to be free of unreasonable and unlawful searches and seizures under Article I, § 12 of the New York State Constitution.

92. Defendants, including defendant Weng, acting in concert and, upon information and belief, within the scope of their employment and authority, consciously disregarded known and excessive risks to plaintiff's liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain an unjust conviction against plaintiff.

93. Upon information and belief, this included a course of conduct and patter of behavior whereby defendants, *inter alia*, created and fabricated evidence to create the appearance of probable cause to believe that plaintiff had committed one or more offenses, intentionally and maliciously concealed material exculpatory evidence and unduly influenced the statements and testimony of witnesses by means of coercion, violence or deceit.

94. That by virtue of the aforementioned acts, defendants deprived plaintiff of his liberty and property without due process of law, in contravention of Article I, § 6 of the New York State Constitution.

95. Defendant City is also liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants and/or employees under the doctrine of *respondeat superior*.

96. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

### NINTH CLAIM SOLELY AGAINST DEFENDANT QI WENG

### (CLAIMS IN INTENTIONAL TORTS BY QI WENG)

97. Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "96" above as

if set forth more fully herein.

98. Private actor defendant Qi Weng committed the deliberate and vicious attack upon plaintiff that led to the state actors herein to commit subsequent misconduct above-described.

99. Without provocation, defendant Weng threatened plaintiff with a subway grate or similar metallic instrumentality that could have caused plaintiff life-threatening injuries or death.

100. Defendant Weng struck plaintiff on the throat, causing abrasions and contusions to plaintiff.

101. The blow to plaintiff caused plaintiff to fall, causing him to break his wrist.

102. Defendant Weng thereafter kicked the door to plaintiff's car causing damage that was evaluated as $937.68. Defendant Queens DA began a prosecution solely limited to damage to plaintiff's car, but plaintiff refused to participate as defendant Queens DA refused to prosecute the assault by Weng.

103. Defendant Weng is responsible for the medical costs, rehabilitation therapy costs for plaintiff's wrist, lost income and car damage payable to plaintiff in a sum undetermined.

104. Defendant Weng caused plaintiff fear, anxiety, pain, mental and emotional suffering.

105. It was the acts of defendant Weng that led to defendants City, NYPD, Queens DA, P.O. Barile and P.O. Rao to deprive plaintiff of his rights, immunities and protections under the Fourth and Fourteenth Amendments of the U.S. Constitution, as the state actors listened solely to defendant Weng and used his false information to harm and assail the plaintiff.

106. Wherefore, plaintiff demands judgment in the sum of $1,251,000.00.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants and, separately, demands said relief against defendant Qi Weng, private actor:

(a.) Compensatory damages in an amount to be determined at trial;

(b.)   Punitive damages in an amount to be determined at trial;

(c.)   Attorney's fees pursuant to 42 U.S.C. § 1988;

(d.)   An award of plaintiff's costs of suit;

(e.)   Pre-judgment and post-judgment interest;

(f.)   An award of the foregoing of no less than $1,251,000.00, as estimated by plaintiff;

(g.)   A separate award against defendant Qi Weng, and in the event the Court so finds, separate damages solely focused on defendant Qi Weng's physical assault on plaintiff and damage to his vehicle; and

(h.)   Such other and further relief as this Court deems just and proper.

Dated:   December 25, 2019

                                                                       _____
                                                                       Michael R. Curran
                                                                       Attorney at Law
                                                                       98-120 Queens Boulevard, Suite #1-C
                                                                       Rego Park, New York 11374-4414
                                                                       (718) 830-0246, ext. 127/(718) 820-7741 (tels.)
                                                                       (718) 830-9088 (facsimile)
                                                                       mrc4law@yahoo.com

                                                                       *Attorney for Plaintiff*