UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SUM CHAN,

                  Plaintiff,

                  v.                              **MEMORANDUM AND ORDER**

THE CITY OF NEW YORK, POLICE            19-CV-7239 (RPK) (SJB)
OFFICER RAFFAELE BARILE, POLICE
OFFICER STACY BYRNES, POLICE
OFFICER REBECCA STEIN, POLICE
OFFICER TENZIN NYNDAK, POLICE
OFFICER BRIAN PORZELT, LIEUTENANT
ANTHONY ANDINO, QI JU WENG, and
S&L NAIL SPA INC.,

                  Defendants.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Sum Chan was arrested after allegedly being involved in an altercation in a Queens parking lot. He brings this action alleging violations of 42 U.S.C. § 1983 and New York State law by nine defendants. The City of New York and New York City Police Department ("NYPD") Officers Raffaele Barile, Stacy Byrnes, and Brian Porzelt move to dismiss plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

## BACKGROUND

      The following facts are taken from the second amended complaint ("SAC") (Dkt. #104) and from videos that plaintiff incorporates into the complaint by reference.

      This action arises from an altercation and arrest on December 26, 2018. SAC ¶ 57. Plaintiff, then 69 years old, pulled into a parking lot in Flushing, New York, and found 46-year-old Qi Ju Weng and four passengers sitting in a van, blocking several parking spaces. *Id*. at ¶¶ 57–

1

58. Plaintiff got out of his vehicle, tapped on Weng's window, and asked Weng to move. *Id*. at ¶¶ 60–62. The two got into an argument, and Weng became enraged and exited his vehicle. *Id*. at ¶¶ 62, 64. Weng picked up a large piece of metal, and plaintiff pulled out cuticle scissors that were "about 3.5 inches in length" to defend himself. *Id*. at ¶¶ 64–65. Plaintiff pointed the scissors to the sky and warned Weng to "be careful." *Id*. at ¶ 65. Weng's passengers exited the van and convinced Weng to drop the metal object and plaintiff put the scissors back into his fanny pack. *Id*. at ¶ 66. But as plaintiff started to leave, Weng punched him in the throat and kicked him in the leg, causing him to fall backwards and break his wrist. *Id*. at ¶ 67. Weng kicked plaintiff while he lay on the ground and then kicked the door on plaintiff's car, causing more than $900 in damage. *Ibid*. A witness, Gerald Pecora, called the police. *Id*. at ¶ 69.

NYPD Officers Raffaele Barile, Stacy Byrnes, Tenzin Nyndak, Rebecca Stein, Brian Porzelt, Andrew Amoroso, Danny Tse, Robert Marciano, and Hunna Lipke, as well as NYPD Lieutenant Anthony Andino, arrived within fifteen to twenty minutes. *Id.* at ¶ 70. Officers Byrnes, Barile, Nyndak, Porzelt, and Stein wore body cameras that recorded part of the encounter. *Id.* at ¶¶ 70–72. When they arrived, plaintiff's throat and arm were bleeding, and plaintiff was holding his broken wrist. *Ibid*. Officer Stein asked plaintiff what happened, but he was "out of it" and "unable to properly communicate." *Id*. at ¶ 70; *see* Stein Video 0:29–1:40; Byrnes Video 3:55–4:09. Officer Stein escorted plaintiff into an ambulance and then retrieved the scissors from plaintiff's fanny pack. SAC ¶ 77; Stein Video 0:29–1:40, 3:00–3:14.

Meanwhile, several officers talked with Weng and the passengers. Weng and one passenger told the officers that plaintiff had reached through Weng's window and choked Weng, and that plaintiff had a knife. SAC ¶ 74; Byrnes Video 0:44–0:52, 2:55–3:02, 4:22–4:27. Pecora approached, and stated that plaintiff had pulled out a "razor" and that Weng's "neck is cut and his

2

fingers are cut." Byrnes Video 0:52–1:33. One passenger told the officers that plaintiff and Weng fought each other, and Pecora corroborated that "they started fighting" and that Weng had knocked plaintiff to the ground. *Id*. at 5:02–5:19, 5:23–5:59; Stein Video 4:12–4:23; Porzelt Video 1:10–1:17.

Weng was arrested and charged with criminal mischief in the third degree in violation of New York Penal Law § 145.05. He was later released with a desk appearance ticket. SAC ¶¶ 80–81.

Plaintiff was handcuffed and taken to the hospital. *Id*. at ¶ 88. There, he was diagnosed with a "fracture of the lower end of unspecified radius" and a "comminuted, impacted fracture of the distal radial metaphysis with dorsal angulation." *Ibid*. Plaintiff was then taken to the NYPD's 109th Precinct, "processed," "arraigned" on several charges, and released after approximately eleven hours in custody. *Id*. at ¶ 89. Office Barile signed the criminal complaint, which charged plaintiff with (i) assault in the third degree in violation of New York Penal Law § 120.00(1), (ii) menacing in the second degree in violation of *id.* § 120.14(1), (iii) criminal possession of a weapon in the fourth degree in violation of *id.* § 265.01(2), and (iv) harassment in the second degree in violation of *id.* § 240.26(1). SAC ¶¶ 90, 136. The charges against plaintiff were eventually dismissed. *Id*. at ¶¶ 92, 120.

Plaintiff then filed this lawsuit against the City of New York, Lieutenant Andino, Officers Barile, Byrnes, Nyndak, Porzelt, and Stein, Weng, and S&L Nail Spa Inc. *See generally* Compl. (Dkt. #1). The operative second amended complaint raises ten claims. Plaintiff alleges that defendants Andino, Barile, Byrnes, Nyndak, and Weng conspired to violate his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. SAC ¶¶ 100–08. Next, plaintiff alleges that defendants Andino, Barile, and Byrnes committed false arrest, malicious prosecution, and

3

malicious abuse of process, again in violation of Section 1983. *Id.* at ¶¶ 109–29. In addition, plaintiff alleges that defendants Andino, Barile, Byrne, Nyndak, and Weng deprived him of due process in violation of Section 1983, *id.* at ¶¶ 130–38, and that defendants Stein, Porzelt, and Andino failed to intervene in constitutional violations committed by others, in violation of Section 1983, *id.* at ¶¶ 139–45. Plaintiff also alleges that all NYPD defendants violated the protections of due process and security against unreasonable searches and seizures under Article I, Sections Six and Twelve of the New York State Constitution. *Id.* at ¶¶ 171–77. In addition, plaintiff claims that the City of New York is liable for constitutional violations under Section 1983, that Weng is liable for an intentional tort under New York law, and that Weng and S&L Nail Spa Inc. are liable for negligence and negligent hiring under New York law. *Id.* at ¶¶ 153–70, 178–99.

The City of New York and Officers Barile, Byrnes, and Porzelt move to dismiss plaintiff's claims against them. *See* Mot. to Dismiss (Dkt. #140-1). Lieutenant Andino, Officer Stein, and Officer Nyndak have not joined the motion, because they allegedly have not been served. *See id.* at 1 n.1.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege

4

sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

When analyzing whether a complaint should be dismissed, a court must generally constrain its review to the complaint itself, documents attached to the complaint as exhibits, documents incorporated by reference in the complaint, and certain documents that are relied on so heavily in the complaint as to be integral to the document. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010). A court may consider videos incorporated by reference in the complaint at least where, as here, no party objects. *See Garcia v. Does*, 779 F.3d 84, 87 & n.2 (2d Cir. 2015); SAC ¶ 1 (incorporating into the complaint the body-worn camera videos of Officers Byrnes, Barile, Nyndak, Porzelt, and Stein).

## DISCUSSION

Plaintiff's claims against the City of New York, Officers Barile, Byrnes, Porzelt, Stein, and Nyndak, and Lieutenant Andino are dismissed. Plaintiff has not adequately pleaded false arrest, malicious prosecution, conspiracy, malicious abuse of process, deprivation of due process, or failure to intervene against the moving officer defendants—Officers Barile, Byrnes, and Porzelt. And because plaintiff's claims with respect to the non-appearing officers are essentially identical, those claims are dismissed against those defendants as well. *See Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990) (explaining that "[*s*]*ua sponte* dismissal" of claims against a defendant who has not yet appeared is appropriate when "the issues concerning [the non-appearing defendant] are substantially the same as those concerning the other defendants" and the

5

plaintiff "had notice and a full opportunity to make out his claim against [the non-appearing defendant]"); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 288 n.4 (S.D.N.Y. 2000) (explaining that a "plaintiff had notice and full opportunity to make out its claim against" a non-moving defendant because "he is similarly situated to the other defendants with respect to the discussion below, [so] he is properly considered in terms of the other defendants' motion to dismiss."); *see also*, *e.g.*, *Shtofmakher v. David*, No. 14-CV-6934 (AT), 2015 WL 5148832, at *12 (S.D.N.Y. Aug. 17, 2015). Finally, because plaintiff has not plausibly alleged a constitutional violation by the defendant officers, the City of New York is entitled to dismissal of plaintiff's claim against it under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**I.     False Arrest**

Probable cause defeats plaintiff's false-arrest claim. Probable cause is a complete defense to a false-arrest claim under the Fourth Amendment. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022); *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021). Probable cause exists in the false-arrest context when an arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). This inquiry is objective; it does not turn on the officer's motivation for the arrest, but rather on whether adequate evidentiary support for an arrest existed. *Id.* at 217 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Plaintiff's arrest was supported by probable cause because the arresting officers had sufficient information to "warrant a person of reasonable caution in the belief" that plaintiff had committed a crime. *Fabrikant*, 691 F.3d at 214. Specifically, the officers had reason to believe plaintiff had assaulted and harassed Weng. Weng and one of Weng's passengers told the officers

6

that "plaintiff got out of his car and reached through [Weng's window] and began choking . . . Weng," and that plaintiff and Weng had fought each other. SAC ¶¶ 74, 77; Byrnes Video 2:55–3:02, 4:22–4:27, 5:00–5:20. A witness, Pecora, corroborated this account, stating that plaintiff and Weng "started fighting." SAC ¶ 77; Byrnes Video 5:23–5:59; Stein Video 4:13–4:23. Moreover, officers observed a cut on Weng's neck, which Weng and the passengers attributed to plaintiff choking Weng. SAC ¶ 77; Barile Video 3:07–3:18. Based on these statements and observations, officers had sufficient information to conclude that plaintiff had committed assault and harassment in violation of New York law. *See* N.Y.P.L. § 120.00(1) ("A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person."); *id*. § 240.26(1) ("A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.").

Plaintiff's counterarguments are not persuasive. First, plaintiff argues that "there is not enough of a record for this Court to evaluate whether or not there was probable cause." Mem. in Opp'n to Mot. to Dismiss 12 ("Response") (Dkt. #141). But plaintiff's 41-page complaint, accompanied by seven videos that the complaint incorporates by reference, sets forth facts sufficient to establish probable cause. *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (on a motion to dismiss, whether probable cause defeats a false-arrest claim may be resolved "where probable cause 'appears on the face of the complaint'") (quoting *Silver v. Kuehback*, 217 F. App'x 18, 22 (2d Cir. 2007)). As explained above, those materials establish that several eyewitnesses stated that plaintiff had choked and fought Weng. "When information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65,

7

70 (2d Cir. 2001). And plaintiff has not pleaded anything that raises doubt as to the eyewitnesses' credibility. Such circumstances arise, for example, if an arresting officer knew of a "bitter prior relationship" between the parties, *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012), or knew that the complaining victim's "cognitive abilities" were so "severely impaired" as to render his "account . . . unreliable," *Moroughan v. City of Suffolk*, 514 F. Supp. 3d 479, 522 (E.D.N.Y. 2021) (off-duty officer's account failed to establish probable cause because he was so drunk that he insisted to responding officers that he had shot himself when, in fact, he had not been shot at all). Plaintiff pleads no comparable circumstances here.

Instead, plaintiff contends that the arresting officers had a duty to investigate further before arresting him, and that doing so would have revealed that plaintiff was acting in self-defense. *See* Mot. to Dismiss 15–17. But "an officer is not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause." *Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022); *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

Plaintiff also suggests that probable cause was deficient because plaintiff was more severely injured than Weng. *See* SAC ¶ 85; *see also id.* at ¶ 70. But while plaintiff's injuries provide some evidence that the confrontation between plaintiff and Weng was not a one-sided affair, they do not provide reason to disbelieve the multiple witnesses who stated that plaintiff had choked and fought Weng.

Finally, plaintiff suggests that officers lacked probable cause for the charges of menacing and criminal possession of a weapon in the fourth degree, both of which require that plaintiff have possessed a "dangerous or deadly instrument or weapon." *See* Response 13. But officers did not

8

falsely arrest plaintiff so long as they possessed probable cause with respect to any crime. If so, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." *Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022) (quoting *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)).

Plaintiff's false-arrest claims are accordingly dismissed.

## II. Malicious Prosecution

Plaintiff's malicious-prosecution claim also fails, because each of the charges brought against plaintiff was supported by at least arguable probable cause, and because plaintiff has not adequately pleaded that defendants acted with actual malice.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Ibid*. (citation and quotation marks omitted); *see Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "[P]robable cause is a complete defense to a claim of malicious prosecution, [but] such probable cause must be shown as to each criminal charge underlying the malicious prosecution claim." *Burton v. Undercover Officer*, 671 F. App'x 4, 5 (2d Cir. 2016); *see Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). Probable cause is assessed in the malicious-prosecution context using "essentially [the] same" framework as governs false-arrest claims, except that it is measured "in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Danielak v. City of New York*, No. 2-CV-2349

9

(KAM), 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005) (quotation marks and citation omitted), *aff'd*, 209 F. App'x 55 (2d Cir. 2006).

In addition, qualified immunity under Section 1983 shields officers from liability for initiating or continuing a proceeding so long as the prosecution was supported by at least arguable probable cause. *See Markman v. City of New York*, 629 F. App'x 119, 121–22 (2d Cir. 2015). This standard is met if an arrest was supported by at least "arguable probable cause," and that probable cause had not dissipated before the criminal proceeding began. *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Myers v. Patterson*, 819 F.3d 625, 633 (2016) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

Plaintiff's complaint and incorporated exhibits establish that each of the charges brought against plaintiff was supported by at least arguable probable cause. As explained above, the complaint and exhibits establish that the arresting officers had probable cause to believe that plaintiff had committed assault in the third degree in violation of New York Penal Law § 120.00(1), and harassment in the second degree in violation of *id.* § 240.26(1). And plaintiff has not alleged any facts suggesting that probable cause had dissipated between the arrest and the time that Officer Barile submitted the criminal complaint in which plaintiff was charged, less than twelve hours after the arrest. *See Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate [between arrest and prosecution], the groundless nature of the charges must be made apparent by the discovery of some intervening fact."); *see also Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014).

10

The weapons and menacing charges against plaintiff were also supported by at least arguable probable cause. A person is guilty of criminal possession of a weapon in the fourth degree when he "possesses any . . . dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." N.Y.P.L. § 265.01(2). A person is guilty of menacing in the second degree if he "intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a . . . dangerous instrument." *Id.* § 120.14(1). Plaintiff contends that officers lacked probable cause with respect to these offenses because, although witnesses had indicated that plaintiff had displayed a razor or knife, the only blade found in his possession was a pair of 1.5-inch cuticle scissors. Response 13. But New York courts have held that an object "need not be inherently dangerous" to qualify as a "dangerous instrument"; instead, an object "no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury." *People v. Carter*, 423 N.E.2d 30, 31–32 (N.Y. 1981) (emphasis omitted). Applying "this use-oriented approach," the New York Court of Appeals has found that objects such as "a rubber boot," *id.* at 31, "a common handkerchief," *id.* at 32, and even a "wad of paper towels," *People v. Vasquez*, 670 N.E.2d 1328, 1337 (N.Y. 1996), constituted dangerous instruments.

Given that precedent, officers had at least arguable probable cause with respect to the menacing and weapons charges in the complaint, even if the evidence indicated that the blade in plaintiff's possession was a pair of cuticle scissors. As noted above, taking as true the facts in plaintiff's complaint, eyewitnesses informed officers that plaintiff had used the instrument in his possession to threaten Weng as part of an altercation in which plaintiff had also choked and fought Weng, with the choking leading to a cut on Weng's neck. SAC ¶ 74; Byrnes Video 2:55–3:02,

11

4:20–4:41, 5:01–5:20; Stein Video 4:18–4:23. Given plaintiff's alleged use of violent force as part of the altercation, and the precedent indicating that even innocuous objects qualify as dangerous instruments when used in a dangerous way, officers of reasonable competence could conclude that the cuticle scissors qualified as a "dangerous instrument" under New York's permissive, context-driven definition of the term. *See, e.g.*, *DiStefano v. Sedita*, No. 11-CV-1125 (MKB), 2014 WL 349251, at *2, *8 (E.D.N.Y. Jan. 31, 2014) (finding probable cause that plaintiff committed menacing in the second degree and criminal possession of a weapon in the fourth degree, in violation of New York Penal Law Sections 120.14(1) and 265.01(2), based on eyewitness statements that plaintiff threatened "I'm gonna get you guys" while holding "a pen" in his hand "in a threatening manner").

For similar reasons, plaintiff has also failed to plead that officers acted with actual malice. Under New York law, malice means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)). Malice cannot be established through "conclusory allegations or unsubstantiated speculation." *Harrison v. Cnty. of Nassau*, 804 F. App'x 24, 28 (2d Cir. 2020) (citation omitted); *see Nieves v. Cnty. of Monroe*, 761 F. Supp. 2d 48, 52 (W.D.N.Y. 2011). Plaintiff asserts only that "[a]s for actual malice, it can be said that Andino, for instigating plaintiff's unlawful arrest, and Barile, for processing it, provide the necessary malice." Response 18. But plaintiff's allegations fail to show that he was falsely arrested, *see* pp. 6–9, *supra*, and plaintiff has not pleaded sufficient facts to infer that defendants acted with "a wrong or improper motive," *Lowth*, 82 F.3d at 573 (citation omitted); *see Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) ("Only where probable cause to initiate a proceeding is 'so totally lacking' may malice reasonably

be inferred.") (quoting *Martin v. City of Albany*, 364 N.E.2d 1304, 1307 (N.Y. 1977)).  And while plaintiff states in the complaint that "there was actual malice in that City defendants prosecuted plaintiff without any basis," SAC ¶ 117, this conclusory allegation is insufficient to survive a motion to dismiss, *see Nieves*, 761 F. Supp. 2d at 52.

### III.   Conspiracy

Plaintiff's conspiracy claim also fails.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  A conspiracy may "be proven by circumstantial, rather than direct, evidence," *ibid*., but a plaintiff "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Accordingly, "[c]omplaints alleging nothing more than vague and general allegations of conspiracy are properly dismissed." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012).

Plaintiff offers nothing more than speculation that a conspiracy exists.  He suggests that Weng bribed the police to falsely arrest plaintiff in order to divert blame from Weng.  *See* Response 2–3, 8–11; SAC ¶ 101.  But the only allegations supporting this theory are that (i) defendants spent more time talking with Weng than with plaintiff; (ii) Lieutenant Andino appeared "surprised" when Officer Byrnes approached a conversation that Lieutenant Andino was having with Weng; (iii) Officer Porzelt "look[ed] unconvinced" when Lieutenant Andino stated that "Weng was only defending himself"; and (iv) Officer Byrnes and Officer Barile turned off their body-worn cameras several minutes into the encounter.  Response 8–9.  These allegations do not come close to

13

supporting a "reasonable inference" that defendants conspired to violate plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 678.

And in any event, the existence of probable cause defeats any claim of a conspiracy to falsely arrest plaintiff. The Second Circuit has held that "a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights." *Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Where "probable cause to arrest . . . [a] plaintiff [exists], there has been no deprivation of a constitutional right and no valid claim of conspiracy" under the Fourth Amendment. *Celestin v. City of New York*, 581 F. Supp. 2d 420, 434–35 (E.D.N.Y. 2008); *see Singer*, 63 F.3d at 119; *accord Fiedler v. Incandela*, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016); *Daly v. Ragona*, No. 11-CV-3836 (JFB) (WDW), 2013 WL 3428185, at *9 (E.D.N.Y. July 9, 2013); *Martinez v. Golding*, 499 F. Supp. 2d 561, 570 (S.D.N.Y. 2007).

### IV. Malicious Abuse of Process

Plaintiff's malicious-abuse-of-process claim fails.

To state a claim for malicious abuse of process, a plaintiff must plausibly allege "that the defendant (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (citation omitted).

"The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To adequately plead that element, a plaintiff must "claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2003). "[A] malicious motive alone" is not sufficient to meet the

14

collateral-objective requirement. *Ibid.* (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). Thus, for example, a plaintiff does not state a claim for malicious abuse of process by alleging that city officials who investigated and arrested him had malicious motives for doing so, absent evidence that the officials were seeking to pursue "an ulterior purpose or objective" outside of the prosecution. *Id.* at 77–78 (emphasis omitted).

Plaintiff's allegations are deficient under these standards. Plaintiff first suggests that defendants wanted to "switch liability for the 12/26/2018 assault from Weng to the plaintiff, in order to harm plaintiff by the misuse of process," adding that defendants' collateral objective was "to harm plaintiff via his unjust arrest." SAC ¶ 126; *see also id.* ¶ 125 (describing collateral objective as "to harm plaintiff"). This allegation is deficient because it amounts to a claim that defendants had an improper or malicious motive—that is, a desire to harm plaintiff—rather than an allegation that defendants intended to inflict a harm separate and apart from the harm resulting from arrest or prosecution. *See Savino*, 331 F.3d at 77–78; *Moritz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2016 WL 3248494, at *5 (S.D.N.Y. June 9, 2016) ("Deprivation of liberty, embarrassment, inconvenience, and legal expenses are direct, rather than collateral, consequences of arrest that are insufficient to support a malicious abuse of process claim.").

Plaintiff next suggests that the "collateral objective included . . . covering up defendants' illegal actions in knowingly arresting plaintiff without any legal basis, justification or probable cause." SAC ¶ 125. But "courts in this Circuit have concluded that allegations that defendants pursued a prosecution in order to 'cover up' their own misconduct or protect other bad actors does not satisfy the collateral objective requirement." *LoPorto v. Cnty. of Rensselaer*, No. 15-CV-866 (LEK) (DJS), 2018 WL 4565768, at *15 (N.D.N.Y. Sept. 24, 2018) (collecting cases); *see, e.g., Crews v. Cnty. of Nassau*, No. 6-CV-2610 (JFB) (WDW), 2007 WL 4591325, at *12 (E.D.N.Y.

15

Dec. 27, 2007) ("Because plaintiffs have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute [plaintiff], the abuse of process claim fails."); *Gilliard v. City of New York*, No. 10-CV-5187 (NGG) (CLP), 2013 WL 521529, at *14 (E.D.N.Y. Feb. 11, 2013) ("At most, Defendants issued the summons with the improper motive of cover[ing] up their abuse of authority in arresting plaintiff. But an improper motive does not equate to an improper purpose; the Defendants used the process of the court for the purposes for which the law created.") (citation, emphasis, and quotation marks omitted).

And while plaintiff offers in his memorandum of law the alternative theory that "[t]he collateral objective was to facilitate incriminating plaintiff for the purpose of soliciting a bribe," Response 19, no such allegation appears in the complaint. "A plaintiff . . . is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss," *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (collecting cases); *see Ying Li v. City of New York*, 246 F. Supp. 3d 578, 617 n.35 (E.D.N.Y. 2017) ("[T]o the extent that Plaintiff argues in her [memorandum of law] that another 'collateral motive'" existed, "Plaintiff will not be permitted to pursue this as part of her abuse of process claim, since there is nothing remotely related to this allegation in the Complaint, nor does Plaintiff cite to any paragraph in the Complaint to support this newly proffered objective.").

Accordingly, plaintiff's malicious-abuse-of-process claim is dismissed.

## V.   Due Process

Plaintiff's due process claim is dismissed. Although plaintiff's complaint raises a due process claim, *see* SAC ¶¶ 130–38, the complaint includes none of the factual allegations that plaintiff relies upon in opposing the motion to dismiss. Specifically, plaintiff asserts for the first time in his opposition brief that he was deprived of due process because the criminal court

16

complaint falsely states that (i) "plaintiff engage[d] Weng from a window of his vehicle"; (ii) Weng had told Officer Barile that plaintiff said, "in sum and substance, I am going to kill you, be careful"; and (iii) Officer Byrnes recovered scissors from plaintiff's bag. Response 20 (quoting Decl. of Michael R. Curran, Ex. 7, at 3 (Dkt. #56-5)). Because these allegations do not appear in plaintiff's complaint, the Court will not consider them here. *See Uddoh*, 254 F. Supp. 3d at 429. And because plaintiff does not respond to defendants' argument that the allegations in plaintiff's complaint fail to state a due process claim, *see* Mot. to Dismiss 12–13; Response 20–21, any due-process claim based on those allegations is dismissed as abandoned, *see Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (collecting cases).

### VI. Failure to Intervene

Plaintiff's failure-to-intervene claim also fails. Because a plaintiff may recover on a failure-to-intervene theory only by showing that the purported failure led to the denial of a clearly established statutory or constitutional right, *Ricciuti*, 124 F.3d at 129, a "failure to intervene claim is contingent upon the disposition of the [underlying] primary claims," *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) (citation omitted). *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) (collecting cases). Because plaintiff's underlying claims fail, so too does his failure-to-intervene claim.

### VII. Municipal Liability

Plaintiff fails to state a claim for municipal liability against the City of New York for substantially the same reason. "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

17

municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). But "*Monell* does not provide a separate cause of action"; rather, "it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Because the complaint does not plausibly allege any constitutional violations, plaintiff's municipal liability claim necessarily fails. *See ibid.* ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

## VIII.    Claims Under the New York State Constitution

Plaintiff's claims under the New York State Constitution are dismissed. "New York courts have held that a private right of action for violations of the state constitution is unavailable if an alternative remedy is available elsewhere, such as under state tort law or through a New York Civil Practice Law and Rules Article 78 action." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (collecting cases). And "courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983." *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 398 (S.D.N.Y. 2020); *see Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) ("Because alternative remedies were available under § 1983 . . . the district court properly dismissed Allen's state constitutional claims.").

Here, defendants argue that plaintiff's state constitutional claims "must . . . be dismissed" because "plaintiff had other remedies under both state law and § 1983," Mot. to Dismiss 25, and plaintiff offers no argument in response. Instead, plaintiff asserts only that "[i]n the event state claims are dismissed, or the Court declines supplemental jurisdiction, plaintiff respectfully requests remand to state court for applicable municipal claims." Response 25. Because plaintiff "does not articulate any reason that a remedy under § 1983 would be inadequate, . . . his analogous

18

state constitutional claims . . . must fail." *Herrera v. Shea*, No. 20-CV-3665 (PKC) (VMS), 2020 WL 7711856, at *9 (E.D.N.Y. Dec. 29, 2020); *see, e.g.*, *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 399 (S.D.N.Y. 2020); *Boger v. N.Y. State Office of Parks, Recreation & Historic Preservation*, No. 5:17-CV-289 (MAD) (TWD), 2019 WL 2766897, at *12 (N.D.N.Y. July 2, 2019); *see also Lipton*, 315 F. Supp. 2d at 446 (finding claim abandoned where plaintiff fails to respond to defendant's argument that the claim should be dismissed).

## CONCLUSION

The motion to dismiss is granted. Plaintiff may file a motion seeking leave to file a third amended complaint within thirty days. Any such motion should include the proposed third amended complaint as an exhibit and explain why leave to amend should be granted. Absent an amended complaint, litigation will continue as to plaintiff's remaining claims against Weng and S&L Nail Spa Inc.

SO ORDERED.

                                        */s/ Rachel Kovner*
                                        RACHEL P. KOVNER
                                        United States District Judge

Dated: March 31, 2023
       Brooklyn, New York