UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SUM CHAN,

                             Plaintiff,

                              **REPORT AND**
                              **RECOMMENDATION**
       - against -             19-CV-7239-RPK-SJB

THE CITY OF NEW YORK, P.O. RAFFAELE BARILE,
P.O. STACY BYRNES, LT. ANTHONY ANDINO, P.O.
TENZIN NYNDAK, P.O. REBECCA STEIN, P.O. BRIAN
PORZELT, QI WENG, and S&L NAIL SPA INC.,

                           Defendants.
----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       The District Court previously dismissed Plaintiff Sum Chan's Second Amended

Complaint as against Defendants the City of New York ("the City"), Raffaele Barile

("Barile"), Stacy Byrnes ("Byrnes"), Anthony Andino ("Andino"), Tenzin Nyndak

("Nyndak"), Rebecca Stein ("Stein"), and Brian Porzelt ("Porzelt," and collectively, "the

City Defendants"), but granted Chan leave to file a motion to amend.  Chan filed a

motion to amend, along with his proposed Third Amended Complaint.  (Mot. to Amend

Second Am. Compl. dated June 14, 2023 ("Mot. to Amend"), Dkt. No. 148; Proposed

Third Am. Compl. dated June 14, 2023 ("TAC"), Dkt. No. 148-1).  Chan's Third

Amended Complaint fails to cure most deficiencies identified by the Court, but he

succeeds in stating a due process claim for fabrication of evidence.  As such, the Court

recommends that Chan's motion to amend be granted in part and denied in part.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

       The Court assumes familiarity with the facts and procedural history detailed in

Judge Rachel P. Kovner's Memorandum and Order dated March 31, 2023 (the "March

M&O" or the "M&O"). *Chan v. City of New York*, No. 19-CV-7239, 2023 WL 2734681, at *1–*2 (E.D.N.Y. Mar. 31, 2023). The factual allegations that follow are taken from the Third Amended Complaint and from the videos that Chan incorporates into it by reference. (TAC ¶ 1).

This case arose out of an altercation in a Queens parking lot. On December 26, 2018, Chan drove into a diner parking lot and observed Defendant Qi Ju Weng and four passengers sitting in a van and blocking several parking spaces. (*Id.* ¶¶ 57–58). The four passengers were all women and employees of Defendant S&L Nail Spa, which Weng either fully or partially owns. (*Id.* ¶ 58). Chan got out of his car to ask Weng to move his van; the two began to argue, prompting Weng to get out of his van and pick up a large piece of metal. (*Id.* ¶¶ 60–64). "[T]o defend himself," Chan pulled out tiny cuticle scissors, about 3.5 inches in length, and pointed them to the sky. (*Id.* ¶ 65). He told Weng to "be careful." (*Id.*). Weng's passengers persuaded him to drop the piece of metal, and Chan put the scissors away. (TAC ¶ 66). But as Chan began to leave, Weng approached him and punched him in the throat, kicking him to the ground and causing Chan to bleed and break his wrist. (*Id.* ¶ 67). A nearby witness, Gerald Pecora, witnessed the altercation and called 911. (*Id.* ¶¶ 67, 69).

NYPD officers Raffaele Barile, Stacy Byrnes, Anthony Andino, Tenzin Nyndak, Rebecca Stein, and Brian Porzelt responded to the 911 call. (*Id.* ¶ 72). Other police officers who were present at the scene were Andrew Amoroso, Danny Tse, Robert Marciano, and Hunna Lipke. (*Id.*). Byrnes, Barile, Nyndak, Porzelt, and Stein wore body cameras that recorded parts of the encounter and are identified in the Third Amended Complaint. (*Id.* ¶ 73; *see also id.* ¶¶ 74, 79–82). The officers interviewed Weng, the passengers, and Pecora; they also attempted to speak to Chan about the

incident.  Weng and the passengers alleged that Chan had reached into the van window and had tried to choke Weng.  (TAC ¶ 75; Byrnes Video at 1:50–2:02, 2:50–3:06).  Weng and one of the passengers claimed that Chan had brandished the scissors at Weng and said, "be careful."  (Byrnes Video at 2:28–2:42).  Pecora claimed that he witnessed Weng and Chan get into an argument and fight, and that Chan took out a "razor"; that account was corroborated by the passengers.  (TAC ¶ 78; Byrnes Video at 0:55–1:32).  But when Stein attempted to speak to Chan, he was in a "delirium" and was unable to communicate with her.  (TAC ¶ 71; Stein Video 0:29–1:40, 3:30–3:35).

The officers placed both Weng and Chan under arrest.  In the process, Andino, the supervising officer on the scene, assigned Barile to handle both arrests.  (TAC ¶ 81).  Barile and Nyndak brought Weng directly to the police station, (*id.* ¶¶ 81–82), but Chan was first loaded into an ambulance, "shackled," and brought to the hospital for treatment.  (*Id.* ¶¶ 91–92).  After he was treated, he was driven back to the police station to be processed.  (*Id.* ¶¶ 92–93).  Chan was held in custody for around 11 hours before he was arraigned and sent home.  (*Id.* ¶ 93).  Barile, as the officer handling the arrests, wrote the criminal complaint upon which the charges were based (the "Criminal Complaint").  (*Id.* ¶¶ 107, 140; Sum Chan New York Criminal Compl. dated Dec. 26, 2018 ("Criminal Complaint"), attached as Ex. 7 to Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 141-8 at 1).[1]  The Criminal Complaint laid out the charges that Chan

---

[1] The Criminal Complaint, originally attached to Chan's opposition to the City Defendants' prior motion to dismiss, is incorporated by reference into the Third Amended Complaint.  The Criminal Complaint is mentioned 14 times in the Third Amended Complaint, and Chan quotes from it extensively and references it.  (*See, e.g.*, TAC ¶¶ 117, 140); *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2020 WL 2489774, at *6 (E.D.N.Y. May 14, 2020) (finding that several letters that were referenced extensively in the amended complaint were incorporated by reference).

was arraigned for: Assault in the Third Degree, Menacing in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree, and Harassment in the Second Degree. (Criminal Complaint at 1; TAC ¶ 94). Barile also stated the basis for the charges, stating that Chan had "pointed . . . scissors in the direction of the complainant and stated to him, in sum and substance, I am going to kill you, be careful." (Criminal Complaint at 2; TAC ¶ 140).

After Chan was released and following his arrest, his counsel met with the Queens District Attorney. (TAC ¶ 96). Approximately three months later, on March 26, 2019, Chan's charges were dismissed pursuant to N.Y. Criminal Procedure Law ("N.Y. CPL") 30.30. (*Id.*).

The prior operative pleading, the Second Amended Complaint, set forth the following claims against the City Defendants under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3) conspiracy; (4) malicious abuse of process; (5) deprivation of due process; (6) failure to intervene; and (7) municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See generally* Second Am. Compl. dated Jan. 15, 2022 ("SAC"), Dkt. No. 104). The Second Amended Complaint also asserted a claim against the City Defendants for violation of the New York State Constitution. (*Id.* ¶ 172). In the March M&O, the Court dismissed all of Chan's claims against the City Defendants but granted him leave to file a motion to amend and cure the deficiencies identified. *Chan*, 2023 WL 2734681, at *3, *9. Chan filed a motion to amend and proposed Third Amended Complaint on June 14, 2023. (Mot. to Amend). The fully briefed motion was referred to the undersigned on December 7, 2023. (Order Referring Mot. dated Dec. 7, 2023).

DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) applies to Chan's motion because it is his third amendment.  The Rule provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); 6 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1480 (3d ed. 2021) ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."); *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting prior version of Rule 15(a)(2)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

And a "motion to amend will be considered futile if the Court determines, 'as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"  *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2014) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)) (adopting report and recommendation); *see also, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257–60 (2d Cir. 2002) (reversing the district court's order granting plaintiff leave to amend

complaint where his proposed new claim "[wa]s barred by substantive contract law");

*Chow v. Shorefront Operating LLC*, No. 19-CV-3541, 2021 WL 225933, at *3–*5

(E.D.N.Y. Jan. 20, 2021) (denying leave to amend complaint to include two new named

defendants where claims against those defendants were barred by the statute of

limitations); *Van Allen v. N.Y.C. Sch. Constr. Auth.*, No. 17-CV-2176, 2020 WL 1275244,

at *4–*5 (E.D.N.Y. Mar. 17, 2020) (denying leave to amend complaint to include § 1983

retaliation claims where plaintiff did not "plausibly allege" individuals were "personally

involved" in incidents).

The City Defendants have asserted that each claim in the proposed Third

Amended Complaint is futile. (Defs.' Resp. in Opp'n to Pl.'s Mot. to Amend dated Sept.

18, 2023 ("Defs.' Opp'n"), Dkt. No. 152 at 1). Each is addressed in turn below.

I.    <u>False Arrest</u>

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest

under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir.

2013). "Under New York law, an action for false arrest requires that the plaintiff show

that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged.'" *Ackerson v. City of White Plains*, 702 F.3d

15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456

(1975)).

> Probable cause is a complete defense to a false-arrest claim under the
> Fourth Amendment. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir.
> 2022); *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021). Probable
> cause exists in the false-arrest context when an arresting officer has
> 'knowledge or reasonably trustworthy information sufficient to warrant a
> person of reasonable caution in the belief that an offense has been
> committed by the person to be arrested.' *Fabrikant v. French*, 691 F.3d 193,

214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). This inquiry is objective; it does not turn on the officer's motivation for the arrest, but rather on whether adequate evidentiary support for an arrest existed. *Id.* at 217 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

*Chan*, 2023 WL 2734681, at *3. In the March M&O, Judge Kovner dismissed Chan's false arrest claim against the City Defendants because there was probable cause for the officers to arrest Chan. *Id.* The officers had enough information for a reasonable person to believe that Chan had assaulted Weng, from interviews of Weng and Weng's passengers, the third-party eyewitness, Pecora, and examination of Weng's injuries. *Id.* Judge Kovner also rejected Chan's argument that the record was insufficient to evaluate probable cause, (*id.* at *4), pointing out that Chan had not "pleaded anything that raises doubt as to the eyewitnesses' credibility." *Id.*

The Third Amended Complaint adds additional allegations as to the credibility of the eyewitnesses. Chan adds conclusory, unsupported assertions that Weng's passengers were "biased" in favor of him, as were "all Spa employees." (TAC ¶ 58; *id.* ¶ 116 (referring to Weng's passengers as a "Greek chorus saying anything at all to support Weng and to avoid prosecution of Weng")). But the officers had no objective, readily identifiable reason to doubt their accounts, infer bias, or doubt their credibility. *See Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022) ("[A]n officer is not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause."); *see, e.g.*, *Fogelman v. Donato*, 111 F. Supp. 3d 282, 286 (E.D.N.Y. 2015) (dismissing plaintiff's claim for false arrest because the complaint only contained "a minor [discrepancy]" that did "not seriously implicate the complaining victim's or the

complaining witness's credibility," and "[f]urthermore, there is no alleged motive to fabricate on the part of either the complaining victim or the complaining witness").[2]

Chan also repeats an argument from before: that probable cause was deficient because Chan was more severely injured than Weng. (TAC ¶¶ 116–17). Chan now emphasizes that Weng's injury was "the size of a mustard seed" and that the "weight of the evidence against Weng as the violent aggressor beyond a reasonable doubt far outweighed any evidence that the police . . . used to claim they had probable cause to arrest plaintiff." (*Id.* ¶ 116). However, as Judge Kovner explained, this does not defeat the officers' probable cause to arrest Chan: "[W]hile plaintiff's injuries provide some evidence that the confrontation between plaintiff and Weng was not a one-sided affair, they do not provide reason to disbelieve the multiple witnesses who stated that plaintiff had choked and fought Weng." *Chan*, 2023 WL 2734681, at *4. "Though there were conflicting accounts of the physical altercation, '[the Second Circuit has] found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee.'" *Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir.2001)); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

---

[2] Chan does nothing to undermine the credibility or reliability of Pecora, the uninvolved eyewitness, and his account alone would be sufficient to establish probable cause to arrest, since Pecora said that Chan brandished a "razor or 'knife scissors.'" (TAC ¶¶ 78, 106).

None of the additional allegations that Chan has added to the Third Amended Complaint cure his defective false arrest claim, and thus, the Court recommends that his leave to amend to add a false arrest claim against the City Defendants be denied.[3]

## II.   Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff "must plead both 'a violation of his rights under the Fourth Amendment' and 'the elements of a malicious prosecution claim under state law.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)).  In New York, "a malicious-prosecution claim requires a plaintiff to show '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions.'" *Id.* at 163–64 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

Judge Kovner dismissed Chan's malicious prosecution claim on two grounds: (1) that there was probable cause for the charges brought against Chan, and (2) that Chan failed to plead that the City Defendants acted with actual malice, the fourth element of a malicious prosecution claim. *Chan*, 2023 WL 2734681, at *4.  On the first ground,

---

[3] Many of the additions to the Third Amended Complaint contain disputes regarding Judge Kovner's decision in the M&O.  (*See, e.g.*, TAC ¶¶ 117–18).  Similarly, Chan's briefs for the present motion to amend barely engage with the issues, but instead take issue with the decision in the original M&O.  (*See* Pl.'s Mem. of Law in Supp. of Proposed Third Am. Compl. dated June 14, 2023, Dkt. No. 149 at 1–2).  These arguments are improper to include in a pleading—since they are pure legal argument— and are irrelevant to whether the factual allegations constitute a viable legal claim.  And the Court does not consider them.

because the officers had at least arguable probable cause to arrest Chan, and Chan had "not alleged any facts suggesting that probable cause had dissipated between the arrest and the time" plaintiff was charged, his malicious prosecution claim failed under the third element.  *Id.* at *5.  On the second ground, Chan failed to allege any plausible facts to show that any of the officers acted with a "wrong or improper motive" to establish the actual malice requirement.  *Id.* at *6 (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).

Chan's malicious prosecution claim must still be dismissed because, as explained above, none of his additional allegations change the finding of probable cause in the March M&O; nor has he added any factual allegations to suggest that probable cause may have dissipated between when he was arrested and when he was charged.[4]  Chan does add allegations of bribery as the allegedly wrong or improper motive of the City Defendants.  (*E.g.*, TAC ¶¶ 75, 90, 111, 134, 143).  Specifically, Chan alleges that the City Defendants solicited a bribe from Weng and maliciously prosecuted Chan to "support their deal with Weng."  (*Id.* ¶ 143).  But these claims are conclusory and without any other supporting allegations.  The only factual bases that Chan provides for the existence of a bribe is "Andino's ardent embrace of Weng's tale," (*id.* ¶ 75), the allegation that Weng was allegedly "cash-laden," (*id.* ¶ 113), and that the City Defendants did not

---

[4] Between his arrest and his charge and arraignment, Chan was placed and "shackled" in an ambulance, brought to the emergency room, treated with a cast on his wrist, and then driven back to the police precinct to be charged.  (TAC ¶¶ 91–92).  There are no allegations as to probable cause dissipating during this interval.  *See Tillman v. Hoffman*, No. 21-CV-1269, 2022 WL 18495556, at *13 (W.D.N.Y. Sept. 14, 2022) ("[P]laintiff does not allege that any evidence or fact . . . surfaced following his arrest that established his innocence."), *report and recommendation adopted*, 2023 WL 1110900, at *1 (Jan. 30, 2023), *aff'd*, No. 23-CV-265, 2023 WL 7180675, at *2 (2d Cir. Nov. 1, 2023).

ask Chan questions or investigate his injuries, (*id.* ¶ 143).  But a police officer believing one witness over another is not, on its own, evidence of a bribe or improper motive.  Nor is the fact that a party may be wealthy or have cash on hand.[5]  A naked allegation of bribery bereft of details is not plausible and is insufficient to carry Chan's burden on a motion to amend.  *See, e.g.*, *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518–19 (S.D.N.Y. 2022) (dismissing a malicious prosecution claim because of the "barebone allegations" of maliciousness by the defendants), *report and recommendation adopted*, No. 19-CV-11265, 2022 WL 874769, at *2 (Mar. 24, 2022).

None of these additional allegations cure Chan's defective malicious prosecution claim, and thus, the Court recommends that his leave to amend to add this claim against all City Defendants be denied.

III.    Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

In the March M&O, Judge Kovner dismissed Chan's conspiracy claim because he only provided speculation that the City Defendants engaged in a conspiracy with Weng.

---

[5] The fact that the City Defendants did not interrogate Chan at the scene is not plausible evidence of any improper motive.  In fact, Chan concedes (and indeed emphasizes) that he was in a "delirium" after the attack and thus unable to communicate clearly.  (TAC ¶ 71).

*Chan*, 2023 WL 2734681, at *6.  Furthermore, the finding of probable cause defeated his § 1983 conspiracy claim.  *Id.* ("And in any event, the existence of probable cause defeats any claim of a conspiracy to falsely arrest plaintiff." (citing *Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020))).

The proposed Third Amended Complaint again fails to allege any non-conclusory facts to support a conspiracy claim.  Chan's additions simply claim that Andino "conferr[ed] with Weng," "formed and agreement with one or more state actors," and committed an "overt act of not investigating plaintiff's injuries and shipping him off to the hospital and away from the scene of the attack so no further investigation occur." (TAC ¶ 111 (emphasis omitted)).  These additions are still purely speculative or conclusory and are insufficient to cure Chan's defective conspiracy claim.  The Court thus recommends denial of his leave to amend to add a conspiracy claim against all the City Defendants.  *E.g.*, *Ciambriello*, 292 F.2d at 324.

IV.    Malicious Abuse of Process

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Azeez v. City of New York*, No. 16-CV-342, 2018 WL 4017580, at *10 (E.D.N.Y. Aug. 22, 2018) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)), *aff'd*, 790 F. App'x 270, 274 (2d Cir. 2019).  The third element—the requirement of a "collateral objective"—is the "crux" of this claim, *Chan*, 2023 WL 2734681, at *7 (quotations omitted), and it requires the plaintiff to show that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.

12

Judge Kovner dismissed Chan's malicious abuse of process claim in the M&O because he did not provide a collateral objective that the City Defendants were allegedly seeking to achieve. *Chan*, 2023 WL 2734681, at *7. Chan originally claimed that the City Defendants' goal was to "harm plaintiff by misuse of process," (SAC ¶ 126), but this is not a collateral objective. *Chan*, 2023 WL 2734681, at *7 ("This allegation is deficient because it amounts to a claim that defendants had an improper or malicious motive— that is, a desire to harm plaintiff—rather than an allegation that defendants intended to inflict a harm separate and apart from the harm resulting from arrest or prosecution."). Judge Kovner also rejected Chan's other allegedly collateral objective—to "cover up" the City Defendants' misconduct—because of case law in this Circuit establishing that acting to "cover up" illegal acts or misconduct is not a collateral objective. *See id.* (collecting cases). The Court did not address Chan's alleged collateral objective of a bribe since it was not mentioned in the Second Amended Complaint and was only addressed in his memorandum of law. *Id.* at *8.

As discussed above, Chan added allegations in the Third Amended Complaint that the City Defendants solicited a bribe from Weng, and he now identifies this as the collateral objective for his malicious abuse of process claim. (TAC ¶ 134). However, also as discussed above, his bribery allegations are entirely conclusory and implausible. *See supra* at pp. 10–11. Chan does not plead any plausible factual allegations to believe that a bribe solicitation took place, and thus, he still fails to establish the collateral objective requirement for a malicious abuse of process claim. Consequently, his leave to amend as to this claim against all the City Defendants should be denied.

V.     <u>Due Process and Fabrication of Evidence Claim</u>

The Due Process Clause of the Fifth Amendment guarantees a criminal defendant's "right to a fair trial," and that "right is violated when a police officer creates false information likely to influence a jury's decision." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (quoting *Ricciuti*, 124 F.3d at 130).  As a result, a plaintiff may utilize § 1983 to "sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (alteration in original) (quotations omitted).  To state such a claim, a plaintiff must allege that (1) "an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Id.* at 128 (alterations omitted) (quoting *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021)).  But to bring a fabricated evidence claim, the plaintiff must also show that his criminal charges resulted in a "favorable termination." *McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019).

In the March M&O, Judge Kovner held that Chan had not stated such a claim in his Second Amended Complaint because he only added additional factual allegations in his legal brief. *Chan*, 2023 WL 2734681, at *8.  Because the pleading itself did not contain any facts to support the claim, (SAC ¶¶ 130–38), the Court did not consider the new allegations.  *Chan*, 2023 WL 2734681, at *8.

The Third Amended Complaint adds additional factual allegations in an attempt to cure the deficiency.  Chan now alleges that Barile "fabricat[ed] evidence to deny due

process" by stating in the Criminal Complaint that Chan threatened Weng and said, "I am going to kill you, be careful." (TAC ¶ 140). Chan alleges, "[n]o witness ever said that plaintiff used those words. What Weng's wife states in Byrnes's video . . . is that plaintiff said: 'Be careful.' That was all. Barile added to the words to make it seem that plaintiff was dangerous." (*Id.*). Chan asserts this due process claim against Andino, Barile, Byrnes, and Nyndak. (*Id.* ¶ 146).

The Court finds that Chan has successfully stated a fabrication of evidence claim under the Fifth and Fourteenth Amendments and § 1983 against Barile alone, sufficient to survive a motion to dismiss, and recommends that Chan be granted leave to amend to add this claim. Chan has successfully alleged that (1) Barile was an "investigating official" and (2) he "fabricated information," fulfilling the first two elements. (*E.g.*, *id.* ¶ 12 (alleging that Barile is a police officer); *id.* ¶ 140 (alleging that Barile added information to the Criminal Complaint that was not said by any witness at the scene)); *see Barnes*, 68 F.4th at 129 (upholding plaintiff's allegation of "fabrication" at motion to dismiss stage because "before discovery, it is unclear what other facts Barnes could be expected to allege in order to show that Defendants' conduct was knowing, as opposed to mistaken"). Chan has also alleged that the fabricated information was forwarded to prosecutors. (TAC ¶¶ 93, 96). Indeed, the Criminal Complaint, signed by Barile, includes the allegedly fabricated statement, "I am going to kill you." (Criminal Complaint at 2; *see* TAC ¶¶ 133–34, 145). These allegations fulfill the fourth element. *See Barnes*, 68 F.4th at 130; *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016) (holding that allegation of "falsified information contained in an officer's account of his or her observations of alleged criminal activity which he or she conveys to prosecutors," sets forth a fabricated evidence claim); *Kee v. City of New York*, 12 F.4th

150, 170 (2d Cir. 2021) (holding that allegations in criminal complaint and other arrest records may constitute fabricated evidence).

As to the third element—that the fabricated information is "likely to influence the jury's verdict"—the City Defendants argue that Chan's claim must fail because the statement was not material. (Defs.' Opp'n at 3). To satisfy the third element, a plaintiff must allege that the fabricated evidence "would likely influence the jury if it arrived at a jury"; it is unnecessary for the criminal case to have actually gone to trial. *Walsh v. City of New York*, No. 19-CV-9238, 2021 WL 1226585, at *7 (S.D.N.Y. Mar. 31, 2021) (quotations omitted). Chan was charged with four crimes: Assault in the Third Degree; Menacing in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree; and Harassment in the Second Degree. (TAC ¶ 94). As alleged, those at the scene— Weng's wife and Weng himself—only told the officers that Chan said, "be careful," while brandishing the scissors. (*Id.* ¶ 140; Byrnes Video at 2:28–2:42). The addition of the statement, "I am going to kill you," would go to Chan's intent regarding the use of the scissors, which is relevant to two of his charges—Menacing in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. (Criminal Complaint at 1; *see* Defs.' Opp'n at 3). The allegedly fabricated statement, coupled with the circumstances of Chan brandishing scissors, would clearly indicate Chan's intent to seriously injure, if not kill, another person. A reasonable jury could credit this statement if offered against Chan. *See Walsh*, 2021 WL 1226585, at *7 ("The statements allegedly made by [the fabricated witness] served as a basis for the criminal complaint signed by [the officer] and filed by the District Attorney."). Thus, the Court finds that the fabricated statement was material, that it would likely influence a jury's verdict, and thus, the third element is fulfilled. *See, e.g.*, *Ekupe v. Santiago*, 823 F. App'x 25, 31 (2d Cir. 2020) (holding that a

reasonable jury could credit inaccurate statements in arrest documentation and upholding plaintiff's fabricated evidence claim on those statements); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) ("Although there was certainly not overwhelming evidence of falsification, a reasonable jury would be entitled to credit [plaintiff's] testimony and reject [the officer's].").

Finally, as to the fifth element—that "plaintiff suffered a deprivation of life, liberty, or property as a result" of the fabricated statement—the City Defendants contend that Chan could have been charged even "[e]xcising the statement 'I am going to kill you' from the Criminal Court Complaint." (Defs.' Opp'n at 3–4). This argument—asserting that that there was probable cause to charge—misunderstands the law. "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." *Ricciuti*, 124 F.3d at 130.

Unlike for a malicious prosecution claim, probable cause is not a defense, *Barnes*, 68 F.4th at 132, for the simple reason that a "prosecutor's decision as to whether to pursue charges may depend on their overall assessment of the case's strength, which in turn may be critically influenced by fabricated evidence, *even where other corroborating evidence also exists*." *Id.* (emphasis added) (quotations omitted). It is, therefore, irrelevant whether excising the fabricated statement would have still resulted in Chan's prosecution—the existence of the fabricated evidence in the Criminal Complaint was still a violation of due process. *See Frost*, 980 F.3d at 248 ("It is therefore irrelevant that there was sufficient evidence to prosecute Frost without [the fabricated evidence]." (quotations omitted)); *Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016) (stating that "the district court's statement that independent

probable cause rules out the possibility that fabricated evidence proximately caused the deprivations stemming from his prosecution is not, as a general matter, correct," and rejecting the district court's finding that "plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself" (quotations omitted)).

The Court finds that Chan has fulfilled the fifth element of a deprivation of life, liberty, or property. "For fabricated-evidence claims based on due process . . . a plaintiff's 'prosecution' can be a 'deprivation of liberty.'" *Barnes*, 68 F.4th at 129 (quoting *Ashley*, 992 F.3d at 139) (noting that case need not have run its course to trial to state a fabricated evidence claim). Here, Chan alleges that he was arrested, processed, held in a holding cell, and arraigned over an approximately 11-hour period. (TAC ¶¶ 92–93). He was charged, "underwent prosecution," and the Criminal Complaint was, at some point, brought to the attention of the Queens D.A. (*Id.* ¶¶ 94, 96). Three months later, Chan's charges were dismissed pursuant to N.Y. CPL 30.30. (*Id.* ¶ 96). This is more than enough for Chan to have asserted a deprivation of liberty. *See Ricciuti*, 124 F.3d at 126–27, 130 (reversing the district court's dismissal of fabricated evidence claim when plaintiff had been charged, arraigned, and had all charges dismissed by pre-trial order after two months); *Torres v. City of New York*, No. 21-CV-10832, 2023 WL 2775679, at *8 (S.D.N.Y. Apr. 4, 2023) ("Courts in this district have held that similar pre-arraignment detentions, albeit brief, are sufficient to satisfy the 'deprivation of liberty' requirement, at least at the motion to dismiss stage."). Thus, Chan has fulfilled the fifth element of a fabricated evidence claim.

Finally, Chan has plausibly alleged that his criminal charges resulted in a favorable termination. This element only requires that "the underlying criminal

proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." *Barnes*, 68 F.4th at 133 (quoting *Smalls v. Collins*, 10 F.4th 117, 139 (2d Cir. 2021)).  This is certainly the case for Chan, since his charges were dropped under New York's speedy trial law, N.Y. CPL 30.30, and there is not alleged to be an ongoing prosecution or outstanding conviction.  (TAC ¶ 96); *Kee*, 12 F.4th at 169–70 (holding that dismissal pursuant to N.Y. CPL 30.30 was a favorable termination under *Smalls*).[6]

In light of the above, Chan has successfully pled a fabricated evidence due process claim against Barile.[7]  The Court respectfully recommends that Chan be granted leave to amend to add a due process fabricated evidence claim against Barile.  However, the Court denies Chan leave to amend to add this claim against the other City Defendants.  "These officers may not be held directly liable as they did not directly

---

[6] The Supreme Court held in the malicious prosecution context that, to establish favorable termination, "a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  And the Supreme Court had also previously determined that a fabricated evidence claim requires "the same rule" as for a malicious prosecution claim.  *McDonough*, 139 S. Ct. at 2157.  Thus, there is some question, in the aftermath of *Thompson*, whether the *Smalls* rule for favorable terminations has been abrogated.

However, it is irrelevant which standard is applied because Chan satisfies both.  The *Thompson* standard only requires that a plaintiff's criminal charges end without a conviction, which Chan has successfully alleged.  (TAC ¶ 96).

[7] "Turning to the Queens County law enforcement officers, the Court finds that Plaintiff has sufficiently alleged, albeit thinly, the elements of a constitutional violation based on fabrication of evidence . . . .  Whether the allegations are sufficient ultimately at summary judgment or at trial remains to be seen.  However, the Court finds that Plaintiff should be given the opportunity to develop the factual record here before a determination is made as to whether these claims can withstand dismissal." *Bristol v. Queens County*, No. 09-CV-5544, 2018 WL 5077166, at *26 (E.D.N.Y. Mar. 30, 2018) (citing *Ricciuti*, 124 F.3d at 130), *report and recommendation adopted*, 2018 WL 4328828, at *2 (Sept. 11, 2018).

forward the incomplete information to prosecutors, an essential element of this claim." *Torres v. City of New York*, No. 20-CV-4007, 2022 WL 955152, at *10 (E.D.N.Y. Mar. 30, 2022).

## VI.   Failure to Intervene

"A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *Ricciuti*, 124 F.3d at 129 (quotations omitted); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "A police officer may be liable for failure to intervene under Section 1983 where (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Gerasimou v. Cillis*, No. 15-CV-6892, 2022 WL 118748, at *5 (E.D.N.Y. Jan. 12, 2022) (quotations omitted).

The Court originally dismissed Chan's failure to intervene claim for failure to state an underlying constitutional violation. *Chan*, 2023 WL 2734681, at *8. However, because Chan has stated a fabricated evidence claim, the Court analyzes Chan's failure to intervene claim for that alleged constitutional violation.

The Third Amended Complaint asserts a failure to intervene by Defendants Stein, Porzelt, and Andino. (TAC ¶ 153).[8] Chan claims that Stein's and Porzelt's alleged skepticism of Chan's fault in the altercation showed that they were aware of a constitutional violation and failed to stop it. (*Id.* ¶ 149). Chan also alleges that Andino

---

[8] The Third Amended Complaint primarily alleges that these officers failed to intervene in Chan's allegedly false arrest. (*E.g.*, TAC ¶¶ 149–50). However, since the Court has denied leave to assert a false arrest claim, it need not engage with these allegations.

"arbitrar[ily]" assigned the arrest to Barile, who is alleged to have submitted fabricated evidence. (*Id.* ¶ 153).

*First*, the claims against Stein and Porzelt are deficient because Chan fails to show that they had a "realistic opportunity to intervene and prevent the harm." *Gerasimou*, 2022 WL 118748, at *5 (quotations omitted). The fabricated evidence violation took place at the police station when Barile returned to the 109th Precinct to fill out his deposition and the Criminal Complaint. (*See* TAC ¶ 140; Criminal Complaint; *see also* Barile Video at 10:32–11:17 (showing Barile return to the 109th Precinct to process Weng's arrest and state that he was "taking both" Weng's and Chan's arrests)). There are no allegations in the Third Amended Complaint that Stein or Porzelt accompanied Barile to the station—in fact, Chan alleges that only Barile and Nyndak returned to the 109th Precinct. (TAC ¶ 82(a)). Nor are there any plausible allegations that Stein or Porzelt knew that Barile would fabricate evidence hours later at the police station when filling out the Criminal Complaint. Without plausible allegations to support that Stein or Porzelt had an opportunity to intervene at the station, or the knowledge to intervene at the scene, Chan's failure to intervene claim as to Stein and Porzelt fails.

*Second*, the claim against Andino must also fail because the Third Amended Complaint both fails to allege that Andino had the opportunity to intervene or that he had actual or constructive knowledge of the alleged constitutional violation. As discussed above, there are no allegations in the Third Amended Complaint that Andino was present when Barile submitted the allegedly fraudulent evidence, and thus, he had no opportunity to intervene. (*Id.*). Thus, Chan's failure to intervene claim against Andino is also futile.

Because none of Chan's additional allegations establish a failure to intervene claim, the Court recommends that his leave to amend to add this claim against the City Defendants be denied.

VII.    Municipal Liability

Under *Monell*, a municipality may be held liable under § 1983 if the deprivation of the plaintiff's constitutional rights "is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Such a custom or policy may be reflected through policy statements, ordinances, regulations, or decisions officially adopted and promulgated by that body's officers." *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (quotations omitted). "In 'limited circumstances,' a municipality may also be held liable for its failure to train its employees," such that the municipality's failure amounted to "'deliberate indifference to the rights of the persons with whom the untrained employees come into contact.'" *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A municipality is deliberately indifferent where it fails to act when it has 'actual or constructive notice,' generally from '[a] pattern of similar constitutional violations by untrained employees,' that its training program is 'deficient.'" *Id.* at 207 (alteration in original) (quoting *Connick*, 563 U.S. at 61–62). "But the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero*, 890 F.3d at 403–04 (quotations and alterations omitted).

In the M&O, Judge Kovner dismissed Chan's *Monell* claim for failure to state an underlying constitutional violation by the officers for which the City could be held liable.

*Chan*, 2023 WL 2734681, at *8. However, because Chan has stated a fabricated evidence claim, the Court analyzes Chan's *Monell* claim for that alleged constitutional violation.

The Third Amended Complaint's additional allegations regarding *Monell* liability are almost entirely focused on Andino. For instance, Chan adds further allegations regarding Andino as a supervising officer who "led the project of solicitation of a bribe" and claims that the City's failure to evaluate Andino amounted to deliberate indifference and imposes *Monell* liability. (TAC ¶ 158). In the same vein, Chan points to three cases in which Andino was accused of planting evidence and committing unlawful searches. (*Id.* ¶ 85).

However, even if these allegations could amount to a showing of deliberate indifference by the City, Andino is not the officer who committed the alleged underlying constitutional violation—Barile is. There are no allegations that Barile had a history of fabricating evidence, nor that the City had actual or constructive knowledge that Barile might allegedly fabricate such evidence. And all of Chan's factual allegations that Barile was essentially just taking orders from Andino, "the ringleader," (TAC ¶ 107), are conclusory. *See supra* at pp. 21.

Because none of Chan's additional allegations plausibly allege *Monell* liability for the City, his leave to amend to add a municipal liability claim against the City should be denied.

VIII.    Violations Under the New York State Constitution

Lastly, Chan reiterates his claim for violations of the New York State Constitution in the Third Amended Complaint. (TAC ¶¶ 174–81). In the March M&O, this claim was dismissed because "a private right of action for violations of the state constitution is

unavailable if an alternative remedy is available," and Chan failed to show that a remedy under § 1983 was inadequate. *Chan*, 2023 WL 2734681, at *9. Chan has only added one additional paragraph to his New York State Constitution claim. (TAC ¶ 180). These sentences do not dispute the adequacy of § 1983 as a remedy, but instead refer to *respondeat superior* liability in a state court forum. (*Id.*). Because Chan has not corrected his original deficiency, leave to add this claim against the City Defendants should be denied for the same reasons as in the March M&O. *Chan*, 2023 WL 2734681, at *9.

## CONCLUSION

For the reasons explained above, the Court recommends that Chan's motion to amend be granted in part and denied in part, permitted only to add the fabricated evidence claim against Defendant Barile.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

/s/*Sanket J. Bulsara* February 15, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York